NATHAN WARREN, JR. ET AL. APPELLANTS, *v.* MARY HAR-
DING.

Where a man, who was by profession a mariner, made his will in the Dela-
ware river on board a steamer, which was towing down said river a vessel,
in which he was to sail as a passenger to Chagres, there to take command
of a lighter to lighten vessels arriving in the river, it was held that the
will was not within the exception in favor of mariners at sea, the testator
being at the time of its execution a passenger and not a mariner in service,
and being on his way to engage in a business, which was not that of a
mariner at sea.

AN appeal from a decree of the Municipal Court of the city of Providence, proving and approving a certain writing as the last will and testament of Thomas A. Harding. The writing, purporting to be the will of said Thomas, was by him signed, and subscribed by Jacob

Albertson, as witness, and was admitted to probate as the will of a seaman at sea. The appellants appealed from this decree on the ground, *first,* that said Court had no jurisdiction, the said Thomas having been at the time of his death an inhabitant of the town of Bristol, and administration having been granted on his estate by the Court of Probate of said Bristol, before the probate of said will by said Municipal Court ; and, *second,* that said paper was not executed with the formalities required by the statute in executing wills, and that, at the time of its execution, said Thomas was not a mariner or seaman at sea and did not intend to make the same, as such will.

It appeared in proof, that Thomas A. Harding was born in Bristol, of which town, it was not disputed, he had been an inhabitant until within a few years of his death. From the age of sixteen until his death, he had been by profession a mariner, and saving about seventeen months, had been constantly abroad in pursuance of his calling as such. At the time the will was executed, said Thomas was on board the steamer Henlopen in the Delaware river. The steamer was towing the schooner Zachary Taylor from Philadelphia to the Delaware Break-Water, from whence said schooner was bound to Chagres, and said Thomas was to go and did go in her as a passenger to Chagres, whither he was going to take charge of a lighter to lighten vessels arriving in Chagres river, in pursuance of a contract between him and Messrs. Howland & Aspinwall of New York. The will was executed between Philadelphia and Lewistown, and, after the execution, the steamer anchored off Lewistown and said Thomas went ashore, the steamer remaining at anchor during the night. The will was dated May 14th, 1849, and the testator died in the Chagres river, in August, 1849.

There was much contradictory evidence, put in on both sides, to prove the residence of the testator, which is considered in the opinion of the Court.

*Hoppin* for the appellee, cited 2 Black. Commentaries, p. 501, to show that this was a good nuncupative will at common law and, as such, within the exception to the statute, in favor of seamen being at sea ; and contended that Thomas A. Harding, when he made his will, was a seaman at sea in the sense of the statute. He was a sea‑ man on board a vessel, *inops consilii*, and bound to Cha‑ gres in pursuit of his vocation. The meaning of the words, "seaman at sea," is a seaman in service and, the moment the testator started on board the steamer for Chagres, he commenced acting in his capacity as a mari‑ ner, taking at that time steps which were as essential to his professional employment, as anything which he did after his arrival. If it is attempted to avoid the will be‑ cause it was executed the same day on which he left Philadelphia, for the same reason every mariner's will executed shortly after leaving port would be void. The Courts construe such wills with peculiar favor. In the case, "In the goods of E. J. Coy," (7 Eng. Ecc. R. 375,) where a seaman, having had leave to go on shore, died of an accident but made his will previous to his death, the Court held it the will of a seaman at sea, although the deceased was not actually on board the ship at the time the will was made. The Courts put seamen and soldiers on the same footing and construe their testa‑ mentary acts liberally to give effect to them if possible, having regard to their reckless and improvident habits and their want of legal counsel, (7 Eng. Ecc. R. 341. Ibid. 522.)

*Blake* for the appellant contended, 1st. The testator when he made this will was not on board the steamer as a seaman, but as a passenger. The statute does not intend to favor seamen, as a class, except when exposed to the peculiar dangers and difficulties of their vocation, and when at sea as passengers, they are no more entitled to the benefit of this exception, than any other passengers. The ground of the exception is their inability to procure legal assistance. The testator in this case was in Philadelphia in the morning before making his will, and in Lewistown on the same day after making it, and cannot claim the benefit of the statute on that ground.

2. The testator had been in Chagres for twenty days before his death. A mariner's will made at sea is not valid if he has been in port long enough to execute a will in ordinary form. There is no authority to this effect; but from the reason of the thing, it would be absurd to hold otherwise, and it is expressly so provided in the codes of those countries which follow the civil law, from which this exception was taken.

3. But, even if the will were not void for these reasons, it would be from the fact that the testator was not pursuing, nor preparing to pursue the occupation of a seaman. He was going to Chagres to take charge of a lighter, in the Chagres River, where he would be on shore every day, and in which business, he could in no sense of the word be considered a mariner at sea.

GREENE, C. J. delivered the opinion of the Court. The first question to be settled is whether the testator had his domicil in Providence or Bristol at the time he made his will. The evidence on this subject is conflicting. Bris-

Warren v. Harding.

tol was his native place, and, it is agreed, was his home at the death of his wife and for some time after. He was from home the greater part of his time. He was at home in 1847 and in 1849. He seems to have expressed himself to his Bristol friends one way, and to his Providence friends another way, as to where he intended to make his home. After a careful examination of all the evidence, we do not find sufficient evidence of any change of domicil from Bristol to Providence.

But as the case has been fully argued upon its merits, we have thought it for the benefit of all parties to announce the opinion we have formed and thus prevent future litigation.

The testator took passage on board the steam boat Henlopen at Philadelphia, for the Delaware Breakwater, where he embarked on board the Schooner Zachary Taylor for Chagres, as passenger, and arrived at that port. He was employed by Howland & Aspinwall of New York to go to Chagres, for the purpose of taking command of a lighter vessel, to lighten vessels bound up the river to Chagres. He made his will while on board the Henlopen, and after he sailed from Philadelphia. The Henlopen towed the Zachary Taylor to the Delaware Breakwater, and thence the latter vessel sailed for Chagres.

The will, being attested by only one witness, is not entitled to probate, unless it comes within the proviso, which excepts the wills of seamen at sea and soldiers in actual service, from the general operation of the statute. Dig. of 1844, p. 232, §4.

The testator was a master mariner by profession. The counsel for the executor contends that the business, in which he was to be employed on his arrival at Chagres,

was that of a seaman at sea, and, being in the employ of
Howland & Aspinwall on his passage to Chagres to be
employed in that business, he is to be deemed a seaman
at sea, just as much as he would be after his arrival at Cha-
gres, and the commencement of the service he was to be
engaged in there.

Now, in the first place, we do not think that as captain
of a lighter vessel in the river, lighting vessels to that
port, he could be considered a seaman at sea. But if this
were otherwise, and his employment after his arrival at
Chagres, was on a voyage across the Atlantic, still we
think while a passenger on board the Henlopen and the
Zachary Taylor, he was not a seaman at sea. The
meaning of these words is a seaman employed as such at
sea. If he had been one of the seaman on board the
Zachary Taylor, he would be considered as at sea, as
soon as she sailed from the wharf at Philadelphia, and
this whether at the time of making his will he was on
board the Henlopen or the Zachary Taylor, the two ves-
sels being fastened together and the Henlopen towing the
Zachary Taylor.

The difficulty is not in the place where the will was
made, but in the fact that the testator was not at the time
of making it a seaman in the sense of the statute, any
more than he was in his passage in the cars from Provi-
dence to Stonington and thence in the Steam Boat to
New York and thence in the cars to Philadelphia.

*Decree of the Municipal Court reversed.*